**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SHAINA DROUILLARD, on behalf of herself and
all others similarly situated,

Plaintiff,

-against-

SPRINT/UNITED MANAGEMENT COMPANY,

Defendant.

------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**
CV 16-624 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

Shaina Drouillard ("Drouillard" or "Plaintiff") filed this putative collective action on behalf of herself and all others similarly situated against Sprint Corporation ("Sprint/United Management Company" or "Defendant") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), Articles 6 and 19, and the New York Codes, Rules, and Regulations ("NYCRR") § 142-2.2.  Drouillard seeks to recover unpaid overtime compensation and regular wages as well as other relief.  *See generally* Amended Complaint ("Am. Compl.") [DE 31].  Opt-in Consent to Join forms have been completed by Moya Reid, Jessy Marcelin, Mario Castro, Yennifer Cartagena, Marina Curra, Mildred Del Rosario, Jose L. Moran, Michael Ospinal, Rembrandt Pena, Miguel Picart, and Takorie Lewis [DE 14, 27-28, 32-37, 44-45].  Plaintiff now moves for Conditional Certification and Court-Authorized Notice pursuant to Section 216(b) of the FLSA.  DE 46.  Subsequent to the filing of the instant motion, Plaintiff filed two additional Consent to Join forms completed by Jenee Granston and Nyoka Britto.  DE 51-52.  For the reasons which  follow, Plaintiff's Motion for Conditional Certification is GRANTED, in part, DENIED in part.

## II.   **BACKGROUND**

### A.   **Factual Background**

The following facts asserted by the Plaintiff are taken from the Amended Complaint filed

on September 16, 2016 [DE 31] and the Declaration of Plaintiff Shaina Drouillard [DE 46-5].

Sprint "is a cell phone and wireless service provider that has [retail] store locations in Kings

County, Queens County, Nassau County, and Suffolk County in the State of New York."  Am.

Compl. ¶ 9.  Plaintiff Drouillard is currently employed by Sprint as an Assistant Store Manager

("ASM") and has worked in that capacity since May 2014.  Am. Compl. ¶ 11; Declaration of

Shaina Drouillard ("Drouillard Decl.") [DE 46-5], annexed as Exhibit C to the Declaration of

Justin M. Reilly, Esq. ("Reilly Decl.") [DE 46-2], ¶ 5.  As an ASM, Plaintiff has worked at the

following Sprint store locations: Lake Grove, Bayshore, Westbury, Riverhead, Jamaica, Valley

Stream, Kings Plaza, Bayridge and Gateway Center Mall.  Am. Compl. ¶ 11; Drouillard Decl.

¶ 5 ("I have worked as an ASM for Sprint at its store locations in Lake Grove, Bay Shore,

Westbury, and Bay Ridge.").  Drouillard previously worked as a Lead Retail Consultant ("LRC")

in Sprint's Manhasset and Westbury locations from September 2012 to May 2014.  Am. Compl.

¶ 10; Drouillard Decl. ¶ 4.  According to the Amended Complaint, Plaintiff was responsible for

the same duties in both job titles.  Am. Compl. ¶ 14.  She "performed opening store procedures,

closing store procedures, did weekly reports, and participated in weekly conference calls."  *Id*.

¶ 13.  As an LRC and ASM, Plaintiff was scheduled to work 5 days per week with two days off.

She was paid by the hour with additional compensation in the form of bonuses.  *Id*. ¶ 15-17.

Plaintiff's hourly rate has ranged from $13.40 per hour to $18.26 per hour, which is her current

rate.  Drouillard Decl. ¶ 6.

As an LRC, Plaintiff worked either from 9 a.m. to 6 p.m., or from 11 a.m. to 8 p.m.  Am.

Compl. ¶ 18; Drouillard Decl. ¶ 7.   As an ASM, Plaintiff worked either from 9 a.m. to 6 p.m., or

from 12 p.m. to 9 p.m.  Am. Compl. ¶ 19; Drouillard Decl. ¶ 7.  In Plaintiff's Declaration, she

explains that the latter shift ended between 9 p.m. and 11 p.m.  Drouillard Decl. ¶ 7.  Plaintiff

was required to punch in at the beginning of her shift and then punch out at the end of her shift.

Am. Compl. at ¶ 20; Drouillard Decl. ¶ 9.  Plaintiff was also required to punch in and punch out

at the start and end of her lunch break, which was generally one hour long.  Am. Compl. ¶ 21;

Drouillard Decl. ¶ 7.  Plaintiff is only able to punch in and out when she is physically present at

one of Sprint's store locations — she does not have remote access to the time keeping system.

Am. Compl. ¶¶ 22-23; Drouillard Decl. ¶ 10.  As an LRC, Plaintiff was required to attend

weekly conference calls.  Am. Compl. ¶ 26.  As an ASM, Plaintiff has been required to attend

weekly conference calls at 10:30 a.m. on Thursdays.  *Id*. ¶ 25.  These calls have lasted for an

hour and sometimes up to two hours and often occurred while she was off-the-clock.  Drouillard

Decl. ¶ 14.  Plaintiff's District Manager, Kenneth McQuiller also participated in the calls and

was made aware that Plaintiff was participating from home, yet these hours were not reflected in

Plaintiff's time record.  *Id*.  According to Plaintiff's Declaration, she was required to participate

in these calls up until she filed the instant lawsuit.  *Id*.

     As an LRC, Plaintiff was required to have a Sprint cell phone for the purpose of receiving

work-related phone calls, text messages, and group chat messages.  Drouillard Decl. ¶ 8; *see* Am.

Compl. ¶¶ 30.  According to Plaintiff, when she was an LRC, her "store managers, district

manager, regional manager and other employees of Sprint regularly called, text messaged [her],

and sent group chat communications at all hours, including times before [her] scheduled shifts,

after [her] scheduled shifts, and on [her] scheduled days off."  Drouillard Decl. ¶ 18.  Plaintiff

claims that she "always answered their communications at all such times as required by Sprint."

*Id*.  Plaintiff further submits that management personnel were fully aware of her off-the-clock

work but failed to compensate her for it.  *Id*.

Once she became an ASM, and up until recently, Plaintiff was "required to have the same Sprint cell phone except that [her] work related emails were added to it as a feature."  Drouillard Decl. ¶ 19; *see* Am. Compl. ¶ 28.  Plaintiff states that she "was required to answer all work-related emails, phone calls, text messages, and group chat communications from" management personnel and other Sprint employees, even if those communications were made when she was off-the-clock.  Drouillard Decl. ¶ 19; Am. Compl. ¶ 33.  Plaintiff was not compensated for this work.  Drouillard Decl. ¶ 19.

Moreover, Plaintiff alleges that Defendant has required her "to travel to and from Sprint stores to pick up inventory" when she was not clocked in.  Am. Compl. ¶ 35.  According to Plaintiff, up until she filed this lawsuit, she was required to conduct these pickups "at least once a week."  Drouillard Decl. ¶ 16.  The number of hours devoted to this work varied depending on the number of trips Plaintiff was required to take and how far away the other Sprint stores were located.  *Id.*  According to Plaintiff, Sprint has a written record of each instance in which she picked up inventory.  Yet prior to the filing of this litigation, Defendant never made an effort to compensate Plaintiff for her work.  *Id.*

Plaintiff has also been required to work on weekly reports before and after her shifts.  *Id.* ¶ 15.  In her Declaration, Plaintiff explains that these reports took about an hour to an hour and a half to complete each week.  *Id.*  Plaintiff sent emails to Kenneth McQuiller, her District Manager, "late in the evenings on Sunday nights laying out the weekly report."  *Id.*  McQuiller knew she was not clocked in during that time yet he made no effort to compensate her for her work.  *Id.*

Plaintiff has also been required to respond to emergencies such as the triggering of an alarm when Sprint stores are closed.  Am. Compl. ¶¶ 36.  According to Plaintiff, this requirement persisted until she filed this case.  Drouillard Decl. ¶ 17.  As an LRC, Plaintiff responded to

4

emergencies almost every other night.  *Id*.  She maintains that Defendant has a record of "each instance where an alarm was triggered during hours that its stores were closed, but failed to compensate [her] for this time except for a single instance since the filing of this lawsuit."  *Id*. ¶ 17.

As an LRC and an ASM, Plaintiff has "consistently worked more than forty (40) hours each workweek."  *Id*. ¶ 20.  Until recently, however, Defendant only paid Plaintiff for the hours she worked while she was clocked in.  *Id*.  Up until the filing of this lawsuit, as an LRC and an ASM, Plaintiff worked "at least an extra two hours a day for the five days [she] worked each week for a total of ten hours per workweek for which Sprint has not paid [her]."  *Id*. ¶ 20; *see* Am. Compl. ¶¶ 40-42.  Plaintiff did not receive any compensation at all for these extra hours where she was not clocked in and physically present at a Sprint store.  Drouillard Decl. ¶ 20; *see* Am. Compl. ¶¶ 40-42.

Moreover, Plaintiff maintains that as an LRC and ASM, she has been required to stay past her scheduled shifts to complete work after she has clocked out, which sometimes included helping a customer or assisting managers or co-workers.  Drouillard Decl.  ¶ 25.  According to Plaintiff, this work is not recorded and she has not been compensated for it.  *Id*.

Plaintiff further alleges in the Amended Complaint that Defendant employs other LRCs and ASMs in retail stores located in Kings County, Queens County, Nassau County and Suffolk County.  Am. Compl. ¶ 44.  LRCs and ASMs "are responsible for attending weekly conference calls during days that they are not scheduled to work or during times before their shifts begin." *Id*. ¶ 45.  LRCs and ASMs are required to have Sprint cell phones and email addresses.  *Id*. ¶¶ 46-47.  Plaintiff alleges that ASMs are required to have work-related emails sent directly to their cellphones and that such emails have been sent to ASMs "before and after their shifts as well as on their days off."  *Id*. ¶ 51.  Plaintiff further provides that "these assistant store managers are

required to respond to these emails and engage in work related activities during times that they are not punched in at the Sprint locations." *Id*. ¶ 52. "[D]efendant's store managers, district manager, regional manager, and other employees have called these employees' work cell phones before and after their shifts as well as on their days off." *Id*. ¶ 49. These employees are required to take the calls "and engage in work related activities during times that they are not punched in at the Sprint locations." *Id*. ¶ 50. Plaintiff alleges that LRCs and ASMs are "required to travel to and from Sprint stores to pick up inventory before their shifts begin." *Id*. ¶ 53. LRCs and ASMs "are responsible for attending weekly conference calls during days that they are not scheduled to work or during times before their shifts begin." *Id.* ¶ 54. They are also required to "participate in weekly meetings on their days off or before their in store shifts begin." *Id*. ¶ 55. These employees do not have remote access to Sprint's time keeping system so they are unable to punch in and out for work performed outside of the defendant's retail locations. *Id*. ¶ 56. "[T]hese employees have worked extra hours a day, several times a week" without being paid "any compensation at all." *Id*. ¶¶ 58-60. Moreover, in her Declaration, Plaintiff states that other LRCs and ASMs who worked with her were also required to assist customers or managers or co-workers once they were clocked out. Drouillard Decl. ¶ 25.

According to Plaintiff, "Sprint's time keeping system and Sprint's management have made it very difficult, if not impossible, to record off the clock work." *Id*. ¶ 11. Sprint requires LRCs and ACMs to verify the hours they work each week. *Id*. However, the timesheet verification system only reflects the hours worked while the employee is physically present at a Sprint store location and clocked in. *Id*. Plaintiff states that "[p]rior to this lawsuit being filed, [she] was only able to click a button to verify the timesheet as reflected on Sprint's online timekeeping system." *Id*. Plaintiff claims that store managers have made it clear to LRCs and ASMs that Sprint's retail stores are "audited and that points are taken away if their employees do

6

not verify the time." *Id*. ¶ 12. "Sprint's management personnel…have pressured [Plaintiff] and other employees to verify time even though they are aware that such time does not accurately reflect the amount of hours that we work each week because it is a reflection on them and their Sprint stores could fail audits if the time is not verified." *Id*.

Although the timekeeping system does not account for time worked off-the-clock, Plaintiff asserts that "there is ample documentation indicating that [Plaintiff] was performing" such work. *Id*. ¶ 21. This documentation includes emails, text messages, group chat messages, phone records, alarm logs, alarm activity reports, inventory sign-in sheets, and other documents. *Id*. According to Plaintiff, the existence of this documentation demonstrates that Defendant was fully aware that Plaintiff was working off-the-clock hours for which she was not being compensated. *Id*.

On or around August 20, 2016, after voicing several complaints to her managers and filing the instant lawsuit, Plaintiff ceased verifying her time in Sprint's timekeeping system since that time was incorrect. *Id*. ¶ 23. When Plaintiff stopped verifying her time, Sprint's Human Resource Manager, Sarah King, and Plaintiff's manager, Mr. McQuiller, "began harassing [Plaintiff] about [her] time verification." *Id*. Plaintiff claims that Mr. McQuiller and Ms. King have "pulled [Plaintiff] off the floor" during conference calls and meetings to discuss time verification. *Id*. Although Plaintiff provided them with documentation evidencing her off the clock work, "under threat of termination," they forced Plaintiff to verify the inaccurate time records. *Id*. King and McQuiller informed Plaintiff that the information she provided was insufficient and requested more details. *Id*. ¶ 24. According to Plaintiff, in an effort to substantiate the time spent picking up inventory at other stores, she requested that Ms. King and Mr. McQuiller provide her with inventory timesheets. *Id*. They refused and instead wrote her up and threatened to terminate her. *Id*.

Plaintiff asserts that in addition to working with certain opt-in Plaintiffs, she also worked with several other LRCs and ASMs employed by Sprint, namely, Jerome Thompson, Cassandra Larney, Andrew Muhlhauser, Justin Perry, Daniel Hilton, Tahisha Jenkins, Nathan Zanelotti, Yarleny Godoy, Chantalle Brown and Tyshanna Williams.  *Id*. ¶ 26.  According to Plaintiff, "all of these LRCs and ASMs have been subjected to the same payroll and timekeeping practices and policies of Sprint as [Plaintiff] and were required to perform off-the-clock work without receiving any such compensation."  *Id*.  Moreover, Defendant has knowledge of the uncompensated work since its management personnel instructed the LRCs and ASMs to perform the work outside of their scheduled shifts and Plaintiff herself personally complained about Defendant's failure to adequately compensate her for the work she had performed.  *Id*. ¶ 27.

### Declarations of Opt-In Plaintiffs

The Motion for Conditional Certification also relies on the Declarations of six Opt-In Plaintiffs:  Moya Reid, Yennifer Cartagena, Takorie Lewis, Rembrandt Pena, Mildred Del Rosario and Jessy Marcelin.  Moya Reid was employed by Defendant as an LRC from about April 2014 to April 2015 in Sprint's Westbury and Bay Ridge, New York locations.  *See* Declaration of Moya Reid ("Reid Decl."), annexed as Exhibit D to the Declaration of Justin M. Reilly, Esq. ("Reilly Decl."), ¶ 4.  From in and around April 2015 until approximately December 2015, Reid worked as an ASM at Sprint's stores in Gateway Center, Deer Park, Manhasset, and Bay Ridge, New York.  *Id*. ¶ 5.

Yennifer Cartagena was employed by Defendant as an LRC from approximately July 2013 until around January 2014, and as an ASM from approximately January 2014 to November 30, 2014.  *See* Declaration of Yennifer Cartagena ("Cartagena Decl."), annexed as Exhibit E to the Reilly Decl.  Cartagena worked in Defendant's store location at the Green Acres Mall in Valley Stream, New York.  *Id*. ¶ 4.  Takorie Lewis was employed by Sprint as an LRC

8

from approximately April 2013 until August 2014, at Sprint's store locations in Bohemia, Manhasset and Bay Ridge, New York.  Declaration of Takorie Lewis ("Lewis Decl."), annexed as Exhibit F to the Reilly Decl., ¶ 4.  From April 2013 until the present, Lewis has been working for Sprint as an ASM at its store locations in Kings Plaza, Valley Stream, Westbury, and Bay Ridge, New York.  *Id.* ¶ 5.  Rembrandt Pena was employed by Defendant as an LRC from approximately March 2014 until about July 2015 at its store location in the Green Acres Mall in Valley Stream, New York.  *See* Declaration of Rembrandt Pena ("Pena Decl."), annexed as Exhibit G to the Reilly Decl., ¶¶ 4, 6.  Mildred Del Rosario was employed by defendant as an LRC from about August 2014 until September 24, 2016 at Sprint store locations in New York, New York.  Declaration of Mildred Del Rosario ("Rosario Decl."), annexed as Exhibit H to the Reilly Decl., ¶ 6.  Jessy Marcelin was employed by Sprint as an LRC from March 2014 until on or about September 22, 2015 at its store location in Green Acres Mall, Valley Stream, New York and at its Woodhaven, New York store.  *See* Declaration of Jessy Marcelin, annexed as Exhibit I to the Reilly Decl., ¶ 5.  The substance of the Opt-In Plaintiffs' Declarations is discussed in greater detail below.

### B.     Relief Sought by Plaintiff Drouillard

Plaintiff Drouillard seeks conditional certification of a class consisting of

> All Lead Retail Consultants and/or Assistant Store Managers employed by Sprint/United Management Company at Sprint Store Locations in New York County, Kings County, Queens County, Nassau County, and Suffolk County, New York at any time between February 5, 2010 and the present.

Proposed Notice of Lawsuit with Opportunity to Join ("Proposed Notice"), annexed as Exhibit J to the Reilly Decl.  Plaintiffs also seek approval of their Proposed Notice and  production of

> a computer readable data file containing the names, last known addresses, home and cellular phone numbers, e-mail addresses, and dates of employment of all Lead Retail Consultants and Assistant Store Managers who currently work for or who have worked for Defendant at its Sprint store locations in New York County, Kings

9

> County, Queens County, Nassau County, and Suffolk County, new
> York at any time from February 5, 2010 (six years prior to the date
> of the filing of the Complaint in this action, February 5, 2016) so
> that notice may be issued to such potential opt-in plaintiffs.

Pl's. Mem. at 25.  Plaintiff further requests authorization from the Court to send notice by first

class mail and email to all members of the proposed collective.  *Id*.  Lastly,  Plaintiff seeks an

Order requiring Defendant to post the court approved notice and opt-in consent forms at all of its

Sprint store locations in New York County, Kings County, Queens County, Nassau County, and

Suffolk County, New York, where it has employed LRCs and ASMs.  *Id*.

### C.    Defendant's Opposition

Defendant urges the Court to deny Plaintiff's Motion for Conditional Certification on the

grounds that Plaintiff has failed to establish the existence of a common policy or practice which

violates the law.  Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to

Proceed as a Collective Action and to Facilitate Notice under 29 U.S.C. § 216(B) ("Def's.

Opp'n") [DE 47] at 2.  In this regard, Defendant maintains that "[t]here is no dispute that

Sprint's 'off-the-clock' policies and time verification procedures are facially compliant with the

FLSA."  *Id*. at 9.  Moreover, Plaintiff's allegation that store managers were aware she falsified

her time records does not establish that Defendant applied its lawful policies in an unlawful

manner.  *Id*. at 10.  Defendant states that Plaintiff admitted at her deposition that she was never

instructed to work off-the-clock or to falsify her time records.  *Id*.  Thus, Sprint argues, it was

Plaintiff's choice to work off-the-clock and the inquiry into whether management personnel were

aware of her decision to do so "is precisely the type of individualized issue inappropriate for

adjudication on a collective-wide basis."  *Id*.  Allegations that other opt-in plaintiffs decided to

perform off-the-clock work and that their managers, who differed from store to store, were aware

that they were doing so, is "insufficient to warrant a collective action."  *Id*. at 11.  Defendant

points out that the allegations of Plaintiff and the Opt-In Plaintiffs vary.  *Id*.  For example,

although certain Opt-In Plaintiffs allege that they were forced to work through their lunch break, Plaintiff Drouillard makes no such allegation.  *Id.*  Moreover, according to Defendant, the Opt-In Plaintiffs concede that they were supervised by different store managers. *Id.*  Plaintiff Drouillard herself admits that the off-the-clock work she performed varied depending on her location.  *Id.*

Defendant relies heavily on *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc*., 27 F. Supp. 3d 313 (E.D.N.Y. 2014) in support of its argument that the individualized inquiries required by this case preclude a court from finding that Defendant "had any uniform business practice across its many locations that intended to prevent employees from receiving compensation for all of the time that they worked."  Def's. Opp'n at 12-13 (quoting *Desilva*, 27 F. Supp. at 325) (internal quotation marks omitted).  Further, Defendant submitted Declarations of current and former Sprint ASMs and LRCs "who have denied ever being directed to perform work 'off the clock' – which belies Plaintiff's assertion of a uniform 'off the clock' practice." *Id*. at 14.  According to Defendant, these Declarants have stated that "on the occasions that they (i) worked outside of their regular shifts (for example, by picking up inventory or responding to alarms) and (ii) reported such work to management, their time records were amended and they were fully compensated for their time."  *Id*.

Defendant further argues that Plaintiff's motion should also be denied on the grounds that the off-the-clock work alleged to have been performed is "*de minimis* and thus requires an individualized analysis not appropriate for collective-wide relief."  *Id*. at 15.  According to the Defendant, there are "insurmountable practical barriers to measuring any time that Drouillard allegedly spent reading and sending text messages and emails."  *Id*. at 16.

Defendant contends that the proposed class definition is improper since it seeks to expand the definition of the collective as set forth in Plaintiff's Amended Complaint to include employees who worked at Sprint store locations in New York County.  *Id*. at 17.  Defendant also

asserts that should the Court choose to conditionally certify a collective in this case, that collective should be limited to ASMs and LRCs within Kenneth McQuiller's District since McQuiller is a District Manager who is responsible for eight of Defendant's retail stores.  *Id*. at 18-19.  During the relevant time period, McQuiller oversaw locations in Nassau County, Suffolk County, Queens County and Kings County.  *Id*.

Defendant further argues that Plaintiff improperly applies the six-year statute of limitations under New York Labor Law and that the Court should reject Plaintiff's request that the statute of limitations be calculated from the date of the filing of the Complaint.  *Id*. at 20.  Defendant urges the Court instead to calculate the statute of limitations period from the date of this Court's order granting or denying the instant motion.  *Id*.  Defendant also asks the Court to use a 45-day opt-in period.  *Id*. at 21.  Lastly, Defendant claims that any notice sent to the collective must disclose the possibility that those who opt-in may be required to pay a portion of court costs if Sprint should prevail in this case.  *Id*.

## III.   **LEGAL STANDARD**

### A.   **Legal Standard on a Motion for Conditional Certification**

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover  . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages.  *Id*.; *Moore v. Eagle Sanitation, Inc.*,

276 F.R.D. 54, 57 (E.D.N.Y. 2011) (citing *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting *Hoffmann v. Sbarro, Inc*., 982 F. Supp. 249, 260 (S.D.N.Y.1997)). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (*Parks v. Dick's Sporting Goods, Inc*., No. 05 Civ. 6590, 2007 WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007)) (internal quotation marks omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. *See Myers v. Hertz Corp.*, 624 F.3d 537, 544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a two-step method" for analyzing collective action certification); *see also Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at *2 (E.D.N.Y. July 23, 2015) *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015); *Amador v. Morgan Stanley & Co., LLC*, No. 11-CV-4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013); *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 583 (E.D.N.Y. 2012). First, the court determines whether the proposed class members are "similarly situated." *Puglisi v. TD Bank, N.A*., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc*., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012)) (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y.2006)); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." *McGlone,* 867 F. Supp. 2d at 442 (citing *Cunningham v. Elec. Data Sys. Corp*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery,

requires the court to make factual findings whether the class members are actually similarly situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y.2007)); *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (quoting *Hens v. ClientLogic Operating Corp*., No. 05-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006)) (internal quotation marks omitted).

The instant motion concerns only the first step — whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery v. Buth-Na-Bodhaige, Inc*., 569 F. Supp. 2d 334, 336 (W.D.N.Y. Aug. 8, 2008)), and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see, e.g.*, *Perez v. Allstate Ins. Co*., No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp*., No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need not meet the requirements of

Rule 23 for class certification." *Rodolico*, 199 F.R.D. at 481 (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (citing *Puglisi*, 998 F. Supp. 2d at 98–99, at *2; Rule 23) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality, typicality, and adequate representation – do not apply to a collective action").

At the initial certification stage, courts do not require proof of an actual FLSA violation but rather require the existence of a "'factual nexus' [] between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *6 (E.D.N.Y. 2015); *see also Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012). This determination is typically based on the pleadings, affidavits and declarations submitted by the plaintiff or plaintiffs. *See generally Fa Ting Wang*, 2015 WL 4603117, at *5-6; *see also Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013) (collecting cases); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."); *Lee*, 236 F.R.D. at 197 (citing *Scholtisek*, 229 F.R.D. at 387; *Masson v. Ecolab, Inc*., 04 Civ. 4488, 2005 WL 2000133, *12-14 (E.D.N.Y. Aug. 18, 2005)) (court's initial determination based on "pleadings and affidavits").

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-existent.'" *Boice v. M+W U.S., Inc.*, No. 14-CV-0505, 130 F. Supp. 3d 677, 694 (N.D.N.Y. Sept. 11, 2015) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10–CV–7735, 2011 WL

5597371, at *5 (S.D.N.Y. Nov. 16, 2011)) (citing *Guillen v. Marshalls of MA, Inc*., 750 F.Supp.2d 469, 480 (S.D.N.Y. 2010)).  As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'"  *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005)) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

However, the standard of proof should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553 (quoting *Hoffman*, 982 F. Supp. at 261).  With this in mind, courts have routinely found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class."  *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs"); *see also Kemper v. Westbury Operating Corp.*, No. CV 12-0895, 2012 WL 4976122, at *2-3 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No.

16

12-CV-265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (citing *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008)) (granting motion for conditional certification based on declaration by the plaintiff "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the statutory minimum wage and not paid overtime pay"); *Doucoure*, 554 F. Supp. 2d at 373 (permitting preliminary certification where plaintiff offered his complaint which contended that he routinely worked in excess of forty hours per week, the defendant failed to pay him overtime, and there were similarly situated hourly employees also denied overtime); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who were subject to the same policies).

Indeed, courts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits. *See Kemper*, 2012 WL 4976122, at *2 (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10–CV–7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011) (granting conditional certification for overtime, minimum wage and tip violations at defendants' restaurants based on declarations from named plaintiffs and opt-ins); *Klimchak v. Cardrona, Inc*., No. CV–09–4311, 2011 WL 1120463, at *4–6 (E.D.N.Y. Mar. 24, 2011) (granting conditional certification at the initial stage of discovery where the two named plaintiffs and two opt-in plaintiffs submitted affidavits); *Lujan v. Cabana Mgmt., Inc*., No. 10–CV–755, 2011 WL 317984, at *4 (E.D.N.Y. Feb. 1, 2011) (granting conditional certification, finding that "[t]he employees' declarations articulate a number of FLSA violations common to all three of the New York locations"); *Cano v. Four M*

*Food Corp.*, No. 08–CV–3005, 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification, finding that sworn statements from the plaintiffs "set[ ] forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other coworkers who were allegedly subject to the same denial of overtime pay."); *Iriarte v. Redwood Deli & Catering, Inc*., No. 07–cv–5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) (granting certification on the basis of plaintiff's one affidavit).

##    B.    Form of Notice

"Neither the [FLSA], nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain." *Moore v. Eagle Sanitation, Inc*., 276 F.R.D. 54, 59 (E.D.N.Y.2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)) (internal quotation marks omitted). "The Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b) noting 'we decline to examine the terms of the notice ... We confirm the existence of the trial court's discretion, not the details of its exercise.'" *Id*. (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989)). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate." *Fasanelli*, 516 F.Supp.2d at 323 (quoting *Hoffmann-La Roche, Inc.*, 493 U.S. at 170, 110 S.Ct. 482) (internal quotation marks omitted); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009).

## IV.   DISCUSSION

### A.   Conditional Certification

Plaintiff Drouillard seeks conditional certification of a class of

> All Lead Retail Consultants and/or Assistant Store Managers
> employed by Sprint/United Management Company at Sprint Store
> Locations in New York County, Kings County, Queens County,
> Nassau County, and Suffolk County, New York at any time between
> February 5, 2010 and the present.

Proposed Notice, annexed as Ex. J to Reilly Decl.  Plaintiff asserts that she has satisfied the first

step of the conditional certification analysis, *i.e.*, she has adequately shown that there are other

similarly situated employees who have been subjected to Defendant's uniform practice of failing

to provide LRCs and ASMs with overtime compensation for off-the-clock work performed

outside of their scheduled shifts.  Pl's. Mem. at 17-19.  In moving for conditional certification,

Plaintiff relies on facts alleged in the Complaint, her own declaration, and the declarations of six

Opt-In Plaintiffs.  Having reviewed these materials, the Court finds that Plaintiff has made the

"modest factual showing" necessary to demonstrate that she and the potential plaintiffs together

"were victims of a common policy or plan that violated the law."  *See Doucoure*, 554 F. Supp. 2d

369, 372 (quoting *Hoffmann*, 982 F. Supp. at 261) (internal quotation marks omitted); *Sbarro*,

982 F. Supp. at 261 (collecting cases); *Trinidad*, 962 F. Supp. 2d at 552-53 (quoting *Myers*, 624

F.3d at 555).  Further, Plaintiff has established a sufficient "factual nexus" between her situation

and that of the putative collective.  *See Sobczak*, 540 F. Supp. 2d at 362 (quoting *Wraga*, 2006

WL 2443554, at *1).

In her Declaration, Plaintiff Drouillard details the alleged "common policy or plan" that

she asserts violates the FLSA and the NYLL.  *See generally* Drouillard Decl.  Plaintiff states that

as a LRC and ASM, she has "consistently" worked in excess of forty hours per workweek.

Drouillard Decl. ¶ 20.  Moreover, until recently, Defendant only paid Plaintiff "for the hours that

[she] worked while clocked-in at the Sprint store locations where [she] worked each week."  *Id*.

19

For those hours worked when she was not clocked in and not physically present at a Sprint store location, Plaintiff "did not receive [her] regular, hourly rate of pay or [her] overtime rate of pay for these hours worked each workweek." *Id*.  Plaintiff argues that Defendant's time keeping system and management personnel "have made it very difficult, if not impossible, to record off the clock work." *Id*. ¶ 11.  In this regard, the system does not allow an employee to add hours that he or she worked outside of their scheduled shift. *Id*.  Prior to the instant lawsuit, Plaintiff alleges she was "only able to click a button to verify the timesheet as reflected on Sprint's online timekeeping system." *Id*.  Moreover, although she verified her time in Sprint's timekeeping system, as was required, Plaintiff explains that she would often complain to management personnel that the time reflected in the system was not accurate since she was performing off-the-clock work. *Id*. ¶ 22.

According to Plaintiff, she was not the only LRC or ASM who has fallen victim to Defendant's unlawful policy.  Plaintiff names six Opt-In Plaintiffs who have joined her as well as several other LRCs and ASMs with whom she worked, specifically Jerome Thompson, Cassandra Lamey, Andrew Muhlhauser, Justin Perry, Daniel Hilton, Tahisha Jenkins, Nathan Zanelotti, Yarleny Godoy, Chantalle Brown, and Tyshanna Williams. *Id*. ¶ 26.  Plaintiff states that "[t]o [her] knowledge, all of these LRCs and ASMs have been subjected to the same payroll and timekeeping practices and policies of Sprint as [Plaintiff] and were required to perform off-the-clock work without receiving any such compensation." *Id*.  Moreover, Plaintiff states that Defendant "has knowledge that [she], the opt-in plaintiffs, and its other LRCs and ASMs have regularly worked off-the-clock hours each week because its management personal [*sic*] instructed us and required us to perform such off-the-clock work outside of our scheduled shifts and outside of the Sprint store locations." *Id*. ¶ 27.

In support of her position, Plaintiff proffers Declarations of six Opt-In Plaintiffs.  These
Opt-In Plaintiffs, collectively, worked at Defendant's retail store locations in Westbury, Bay
Ridge, Gateway Center, Deer Park, Manhasset, Valley Stream, Bohemia, Kings Plaza and New
York, New York.  *See* Section II *supra*.  Each Opt-In states that he/she was paid at an hourly rate
and received additional compensation in the form of commissions.  Reid Decl. ¶ 6, Cartagena
Decl. ¶ 7, Lewis Decl. ¶ 6, Pena Decl. ¶ 7, Rosario Decl. ¶ 8, Marcelin Decl. ¶ 7.   Each Opt-In
generally worked five days per week and had the remaining two days off.  Reid Decl. ¶ 7,
Cartagena Decl. ¶ 8, Lewis Decl. ¶ 7, Pena Decl. ¶ 8, Rosario Decl. ¶ 9, Marcelin Decl. ¶ 8.  Like
Plaintiff, each Opt-In could only punch in and out while physically present at a Sprint store
location.  Reid Decl. ¶ 10, Cartagena Decl. ¶ 11, Lewis Decl. ¶ 10, Pena Decl. ¶ 12, Rosario
Decl. ¶ 12, Marcelin Decl. ¶ 11.  Declarants were required to verify their hours using Sprint's
timekeeping system.  Reid Decl. ¶ 11, Cartagena Decl. ¶ 15, Lewis Decl. ¶ 11, Pena Decl. ¶ 14,
Rosario Decl. ¶ 14, Marcelin Decl. ¶ 13.  Each Opt-In claims that he or she consistently worked
hours beyond the scheduled shifts and outside of Sprint store locations.  Reid Decl. ¶ 12,
Cartagena Decl. ¶ 11, Lewis Decl. ¶ 8, Pena Decl. ¶ 13, Rosario Decl. ¶ 13, Marcelin Decl. ¶ 14.
The Declarants were required to have a work cell phone capable of receiving work-related phone
calls, text messages and group chats.  Reid Decl. ¶ 8, Cartagena Decl. ¶ 16, Lewis Decl. ¶ 8,
Pena Decl. ¶ 13, Rosario Decl. ¶ 17, Marcelin Decl. ¶ 15.  ASMs were also required to have a
Sprint email address so that work-related emails could be received on their work cell phones.
Reid Decl. ¶ 15, Cartagena Decl. ¶ 17, Lewis Decl. ¶ 15.  The Opt-Ins were responsible for
responding to work-related communications at all hours and were required to do other off-the-
clock work that included traveling to and from other Sprint store locations to pick up inventory,
responding to emergencies, participating in weekly conference calls, and completing weekly

reports.  *See generally* Reid Decl. ¶ 13-20, Cartagena Decl. ¶ 16-20, Lewis Decl. ¶ 14-20, Pena

Decl. ¶ 16-20, Rosario Decl. ¶ 17-20, Marcelin Decl. ¶ 15-17.

Moreover, certain Opt-Ins were responsible for working the opening shift.  Cartagena

Decl. ¶ 12; Del Rosario ¶ 21.  According to Cartegena, this shift required her to "arrive early,

pull open the gate and unlock the store, check the entire store location, turn off the alarm system,

pull open the gate for [his] co-workers, re-enter the store, turn on the computer system, and then

log-in to the timekeeping system before [he] was even able to clock-in for [his] shift."  Cartagena

Decl. ¶ 12.  Del Rosario had similar duties.  Del Rosario ¶ 21.  Cartagena claims that her pre-

clock-in duties took around 15 to 20 minutes to complete each day that she worked; Del Rosario

states that her duties took around 25 to 30 minutes to complete.  Cartagena Decl. ¶ 12; Del

Rosario ¶ 21.  Moreover, Cartagena states that she was usually forced to work through her lunch

break and that she was even directed to come in on her scheduled days off in order to meet her

sales goal.  *Id*. ¶¶ 12-13.  Further, Pena claims that three to four times per week he was required

to travel to and from businesses for the purpose of selling Sprint devices and merchandise but

was not compensated for his "travel, time, or mileage in connection with this work."  Pena Decl.

¶ 19.  Del Rosario states that she was often required to continue working even after she punched

out at the end of the day "to either finish helping customers or to complete the closing duties and

set the stores up for work the next day."  Del Rosario Decl. ¶ 22.  According to Del Rosario,

these duties took approximately 45 minutes to an hour or an hour and a half.  *Id*.

Each Opt-In states that he/she regularly worked more than 40 hours per week, yet

Defendant only compensated them for the hours worked at a store location while punched in

since the timekeeping system did not permit the Opt-Ins to manually input time that they worked

beyond their scheduled shifts and outside of a Sprint store location.  Reid Decl. ¶ 21, Cartagena

Decl. ¶ 21, Lewis Decl. ¶ 21, Pena Decl. ¶ 21, Rosario Decl. ¶ 23, Marcelin Decl. ¶ 18.

According to Reid, she "worked a minimum of an additional ten to fifteen hours each workweek for which Sprint has not paid [her.]"  Reid Decl. ¶ 22.  Cartegena worked "at least an additional ten hours each week for which Sprint has not paid [her]."  Cartegena Decl. ¶ 22.  Lewis asserts that he worked "a minimum of an additional ten to twelve hours each workweek for which Sprint has not paid [him]."  Lewis Decl. ¶ 22.  Pena worked "at least an additional ten to fifteen hours each week for which Sprint has not paid [him]."  Pena Decl. ¶ 22.  Each week, Del Rosario and Marcelin worked an additional eight to ten hours, and an additional ten to twelve hours, respectively, with no compensation.  Del Rosario Decl. ¶ 24; Marcelin Decl. ¶ 19.  Although the time reflected in the timekeeping system was not accurate, according to certain Opt-Ins, it was made clear that if they did not verify their time, they would be subjected to adverse action.  Reid Decl. ¶ 11, Cartegena Decl. ¶ 15, Lewis Decl. ¶ 11.  According to the Declarants, all LRCs and ASMs have regularly worked off-the-clock hours since management personnel required it.   Reid Decl. ¶ 25, Cartegena Decl. ¶ 25, Lewis Decl. ¶ 25, Pena Decl. ¶ 25, Rosario Decl. ¶ 28, Marcelin Decl. ¶ 22.

As previously discussed, a plaintiff in an FLSA case must meet only a minimal evidentiary burden at the collective action certification stage.  *See Damassia v. Duane Reade Inc*., No. 04-CV-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (characterizing a plaintiff's burden at this stage as "minimal"); *Lee*, 236 F.R.D. at 197 (recognizing plaintiff's minimal burden at this stage).  Such a burden may be met when a plaintiff relies not simply on the pleadings but also submits "other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members."  *Chime v. Peak Sec. Plus, Inc*., 137 F. Supp. 3d 183, 199 (E.D.N.Y. 2015) (citing *Lin v. Benihana Nat'l Corp*., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010)).  The Court finds that the Opt-In Declarations, in combination with the allegations set forth in the Amended Complaint, Motion for Conditional Certification, and

Declaration of Plaintiff Drouillard support an inference that Plaintiff and the Opt-In Plaintiffs are or have been subjected to a common policy of failing to compensate LRCs and ASMs for work performed outside of their scheduled shifts.  The Court further finds that Plaintiff has established enough of a factual nexus between her circumstances and the circumstances of the Opt-In Plaintiffs.  *See generally*, *Bhumithanarn*, 2015 WL 4240985, at *3; *Kemper*, 2012 WL 4976122, at *2; *Khamsiri*, 2012 WL 1981507, at *1.

Moreover, the Court has determined that, at this preliminary stage, Plaintiff Drouillard has also provided a sufficient basis for the Court to grant conditional certification of other LRCs and ASMs who work or have worked, during the relevant time period, at store locations in Nassau County, Suffolk County, Queens County, Kings County and New York County.  As noted above, Plaintiff Drouillard has submitted affidavits from LRCs and ASMs who have worked, collectively, at Sprint store locations in Westbury, Bay Ridge, Gateway Center, Deer Park, Manhasset, Valley Stream, Bohemia, Kings Plaza and New York, New York.  The fact that Plaintiff Drouillard may not have worked at the very same store locations as other potential plaintiffs does not defeat Plaintiff's motion.  *Hamadou v. Hess. Corp.*, 915 F. Supp. 651, 662 (S.D.N.Y. 2013) (citing *Rosario*, 828 F. Supp. 2d at 516–17 ("Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan.")) ("Courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work.").

Defendant does not dispute that LRCs and ASMs are required to punch in at the start of their shift and punch out at the end of their shift using Defendant's timekeeping system.  In fact, the requirement is set forth in Sprint's Retail Time Attendance policy, which applies to "All Company Owned Retail Stores."  *See* Exhibit F annexed to the Declaration of Harris M. Mufson

24

("Mufson Decl.") [DE 47-10].  Moreover, the policy also states that "Hourly Employees are PROHIBITED from working "Off-the-Clock," which is defined as "work performed and not included in total hours worked during a workday."  *Id.*  Likewise, LRCs and ASMs do not have the ability to manually input "off the clock" work that they perform.  Drouillard Decl. ¶ 11; Reid Decl. ¶ 21, Cartagena Decl. ¶ 21, Lewis Decl. ¶ 21, Pena Decl. ¶ 21, Rosario Decl. ¶ 23, Marcelin Decl. ¶ 18.  Defendant's timekeeping system therefore cannot account for certain work activities.  The Court finds that these facts satisfy "the modest showing of a factual nexus between plaintiffs' claims and other potential class plaintiffs, since non-exempt employees who are potential members of the class would also be subject to [Defendant's timekeeping] system and its attendant policies."  *Zivali v. AT & T Mobility LLC*, 646 F. Supp. 2d 658, 662 (S.D.N.Y. 2009) (granting conditional certification where the plaintiffs, Assistant Store Managers and Retail Sales Consultants, alleged that Defendant AT & T's timekeeping system failed to account for the time they worked "off the clock"); *see Puglisi*, 998 F. Supp. 2d at 100 (finding that Assistant Store Manager class members across the nation were similarly situated on the grounds that the plaintiffs had adequately proven the ASMs were "treated uniformly to some degree, and that they have similar job duties and requirements.").

The Court finds Defendant's arguments here unpersuasive.  Defendant contends that the instant case requires individualized inquiries that preclude a court from finding that Defendant "had any uniform business practice across its many locations that intended to prevent employees from receiving compensation for all of the time that they worked."  Defendant cites *Desilva v. North Shore-Long Island Jewish Health System*, Inc., 27 F. Supp. 3d 313 (E.D.N.Y. 2014) in support of its position.  *Desilva*, however, is distinguishable from the instant case.  *Desilva* involved a motion for decertification of a collective action, as well as a motion for Rule 23 class certification and final approval of an FLSA collective.  *Id.* at 317.  Unlike a motion for

certification, a motion for *decertification* requires application of "heightened scrutiny in determining whether Plaintiffs are similarly situated for the purposes of the FLSA." *Id*. at 319 (citing *Myers*, 624 F.3d at 555).  In the context of a decertification motion, courts consider the following factors: (1) "disparate factual and employment settings of the individual plaintiffs," (2) "defense available to defendants which appear to be individual to each plaintiff" and (3) "fairness and procedural considerations." *Id*. at 320 (quoting *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (citing *Zivali*, 784 F. Supp. 2d at 460; *Ayers v. SGS Control Servs., Inc.*, 03–CV–9077, 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007)) (internal quotation marks omitted).  Those issues are not in play here because the case is only at the preliminary stage of collective action certification.  Therefore, *DeSilva* has no application here.

At this preliminary stage, there is a "low bar," *Cohen v. Gerson Lehrman Grp., Inc*., 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (quoting *Mendoza v. Casa de Cambio Delgado, Inc.,* No. 07-2579, 2008 WL 938584, at *2 (S.D.N.Y. 2008)) and "a plaintiff's burden is 'minimal[.]'" *id*. (quoting *Lee,* 236 F.R.D. at 197.  A plaintiff "need not show that all proposed collective action members held identical jobs or were subject to identical treatment; rather, certification is appropriate 'where all putative class members are employees of the same [ ] enterprise and allege the same types of FLSA violations.'"  *Guang Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011) (quoting *Fasanelli*, 516 F. Supp. 2d at 322) (citing *Williams v. Twenty Ones, Inc*., No. 07 Civ. 3978, 2008 WL 2690734, at *1–2 (S.D.N.Y. June 30, 2008)).  Moreover, the standard for class certification under Rule 23 is far more demanding than the standard applied at the conditional certification stage and the final approval stage for a collective action. *See id*. at 328-29 ("A number of district courts in this Circuit have observed that the second-stage 'similarly situated' analysis under FLSA § 216(b) is 'considerably less stringent than the

requirement of Fed. R. Civ. P. [ ] 23(b)(3) that common questions "predominate."'"); *see also Dilonez*, 35 F. Supp. 3d at 252 (citing *Puglisi*, 998 F. Supp. 2d at 98–99, at *2; Rule 23) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality, typicality, and adequate representation – do not apply to a collective action"). The Court points out that in *Desilva*, a collective was, in fact, conditionally certified prior to the motion for decertification being filed. *Id*. at 317.

Defendant further argues that the off-the-clock work that is alleged to have been performed by Plaintiff is *de minimis* and that there exist "insurmountable practical barriers" to measuring such work. According to Defendant, these factors further require individualized analyses that are "not appropriate for collective-wide relief." Def's. Opp'n at 15. This argument is premature. Tellingly, none of the cases cited by Defendant in support of its position involved motions for conditional certification. *See Desilva*, 27 F. Supp. 3d at 326 (Before the court were motions for decertification, final approval of the collective, and Rule 23 class certification.); *Zivali*, 784 F. Supp. 2d at 468 (Before the court was a motion for decertification and motion for summary judgment.); *Singh v. City of N.Y.* 524 F.3d 361 (2d Cir. 2008) (appeal from a district court's order on a motion for summary judgment.); *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) (appeal from the denial of overtime claims.); *Reich v. New York City Transit Auth.*, 45 F.3d 646 (2d Cir. 1995) (appeal from a judgment holding that a defendant was required to compensate the plaintiff employees under the FLSA). The Court will not, at this early stage, make a finding whether Plaintiff's off-the-clock work was *de minimis* or whether barriers to accurately measuring the amount of off-the-clock work performed exist.

Even if the Court were to assume that Plaintiff's claims required individualized inquiries, it is well established that such inquiries "would not necessarily defeat a motion for conditional

certification of a collective action." *Bifulco v. Mortg. Zone, Inc*., 262 F.R.D. 209, 215 (E.D.N.Y. 2009) (citing *Neary v. Metro. Prop. & Cas. Ins. Co.,* 517 F. Supp. 2d 606, 620 (D. Conn. 2007)); *see Cruz v. Lyn-Rog* Inc., 754 F. Supp. 2d 521, 525 (E.D.N.Y. 2010) (collecting cases) ("[I]t is well settled that the existence of certain individual claims or defenses does not preclude the conditional certification of an FLSA collective action."); *see also Rosario*, 828 F. Supp. 2d at 517 (quoting *Cano v. Four M. Food Corp*., No. 8-3005, 2009 WL 5710143, at *7, (E.D.N.Y. Feb. 3, 2009)) (determining that "[i]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs") (internal quotation marks omitted); *Summa v. Hofstra Univ*., 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010) (citing *Colozzi v. St. Joseph's Hosp. Health Ctr*., 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)) ("[T]he fact that the putative class involves a variety of diverse positions ... and requires an individualized inquiry into each putative class member does not undermine the conditional certification of the class since under section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided they are subject to a common unlawful policy or practice.").  Moreover, with regard to the particular issue of whether the plaintiffs' managers had actual or constructive knowledge of Plaintiff's and the Opt-In Plaintiffs' decisions to perform off-the-clock work, such an inquiry is reserved for a later stage of the litigation, once discovery has been completed and a record has been established. *Zivali*, 784 F. Supp. 2d at 468.

In further opposition to Plaintiff's motion, Defendants have submitted the declaration of Harris M. Mufson, attorney for Defendant.  *See* Declaration of Harris M. Mufson ("Mufson Decl.") [DE 47-1].  Attached to the Mufson Declaration are excerpts from the transcript of the deposition of Plaintiff Drouillard taken on November 29, 2016.  *See* November 29, 2016

Transcript of Deposition of Plaintiff Drouillard, annexed as Ex. A to Mufson Decl.  Defendant

has also submitted the Declaration of District Manager Kenneth McQuiller, as well as the

Declarations of Sean Ishum, a Finance Systems Analyst, Taylor Hernandez, an LRC, Shemariah

Etienne, an LRC, and Evan Devaux, a current ASM and former LRC.  *See generally* DE 47-13-

DE 47-18.  However, the Court points out that it is not appropriate at this preliminary

certification stage for the Court to make factual findings as to whether any of the testimony

contained in the deposition or Declarations rebut Plaintiff's assertions that (1) she was similarly

situated to the Opt-In Plaintiffs, or (2) she and the Opt-In Plaintiffs were in fact subject to a

common policy or scheme which deprived both Plaintiff and all those similarly situated of

overtime compensation.  *See Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 (D.

Conn. 2009) ("The court notes that, in highlighting specific sections of deposition testimony . . .

[Defendant] appears to be couching arguments about the merits of the [] case[.] [However], [a]t

the certification stage, a court need not judge the merits of the plaintiffs' claims because they are

irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their

claim."); *see also Schaefer v. M & T Bank Corp.*, 122 F. Supp. 3d 189, 194 (S.D.N.Y. 2015)

(quoting *Davis v. Abercrombie & Fitch Co.*, No. 08-1859, 2008 WL 4702840, at *9 (S.D.N.Y.

Oct. 23, 2008)) (citing *Francis v. A & E Stores., Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *2

(S.D.N.Y. Oct. 15, 2008)) ("When evaluating whether court-authorized notice is appropriate,

'the court does not resolve factual disputes, decide ultimate issues on the merits, or make

credibility determinations.'"); *Garcia v. Four Bros. Pizza*, No. 13 CV 1505, 2014 WL 2211958,

at *6 (S.D.N.Y. May 23, 2014) (quoting *Hoffmann*, 982 F. Supp. at 262) (citing *Masson*, 2005

WL 2000133, at *13) (refusing to consider deposition testimony that would undermine plaintiff's

FLSA claims at the conditional certification stage since "the Court need not evaluate the merits

of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs

can exist here. . . .") (internal quotations marks omitted); *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (quoting *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012)) (citing *Lujan*, 2011 WL 317984, at *7) (recognizing that defendant's submission of declarations of current employees "cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery") (internal quotation marks omitted).  For the same reasons, the Court will not opine on whether Defendant's representation that Plaintiff Drouillard and the Opt-In Plaintiffs "were paid a significant amount of overtime compensation… 'strongly suggest[s]' that they could have been paid for overtime if they requested it."  Def's. Opp'n at 11 n.3.

Again, at this preliminary stage, the Court must be satisfied that the proffered evidence provides some support, however marginal, to Plaintiff's factual showing that she and the Opt-In Plaintiffs were subject to an unlawful policy or practice, namely, Defendants' policy of failing to pay proper overtime compensation to LRCs and ASMs — action which, if proven, violates the FLSA.

### B.   Proposed Opt-In Class

The proposed collective consists of:

> All Lead Retail Consultants and/or Assistant Store Managers employed by Sprint/United Management Company at Sprint Store Locations in New York County, Kings County, Queens County, Nassau County, and Suffolk County, New York at any time between February 5, 2010 and the present.

Proposed Notice, annexed as Exhibit J to Reilly Decl.  Defendant argues that the scope of the proposed collective is "geographically overbroad because it seeks to expand upon the collective as defined in the Amended Complaint as described by Plaintiff during her deposition."  Def's.

30

Mem. at 17. According to the Amended Complaint, Plaintiff seeks to proceed as a collective

action on behalf of herself and the following class of persons:

> All lead retail consultants and assistant store managers who worked
> for the Defendant at Sprint locations in Kings County, Queens
> County, Nassau County and Suffolk County at any time from six
> years prior to the filing of this action to the entry of judgment in this
> action who give their consent, in writing to become party plaintiffs
> (hereinafter the "FLSA Class") and who were not paid overtime
> compensation for hours that they worked in addition to their
> scheduled hours.

Am. Compl. ¶ 64. In support of Plaintiff's request, she has provided the Court with the

Declaration of Mildred Del Rosario, a former LRC who worked at Sprint's stores at 56th Street

and Lexington Avenue, 175 5th Avenue, and 169 East 86th Street in New York, New York. As

discussed in detail above, Ms. Rosario sets forth the very same allegations with respect to

Defendant's purported unlawful policy as do the other Opt-In Plaintiffs, namely, that she

consistently worked more than forty hours each workweek and that Sprint only paid her for the

hours she worked while punched-in. Rosario Decl. ¶ 23. Moreover, she worked at three

different store locations in New York, New York. In light of this documentation, the Court will

permit the Plaintiff to expand the scope of the collective to include employees in New York,

New York. *See Chapman v. First Index, Inc*., 796 F.3d 783, 785 (7th Cir. 2015) (citing *Kasalo

v. Harris & Harris, Ltd*., 656 F.3d 557, 563 (7th Cir. 2011)). Defendant's position that the

collective should not include individuals who worked in New York City is not sustainable.

    The Court finds that cases in which the plaintiff's request to expand the scope of a class

were declined are distinguishable from the instant case. For example, in *Toure v. Cent. Parking

Sys. of New York*, No. 05CIV.5237, 2007 WL 2872455, at *3 (S.D.N.Y. Sept. 28, 2007), the

court declined to certify a collective that encompassed two additional categories of Defendants'

employees on the grounds that (1) those employees were the subject of another collective action

before the court in a separate case, and (2) the plaintiffs failed to provide any evidence that they

were employed in either of the two roles that they sought to add. *Id.* Moreover, in *In re Wholesale Grocery Prod. Antitrust Litig.*, No. 09-MD-2090, 2016 WL 4697338, at *1 (D. Minn. Sept. 7, 2016), *certificate of appealability denied*, No. 16-8019, 2016 WL 9712044, *6 (8th Cir. Nov. 7, 2016), as cited by Defendant, the requested expansion would have resulted in the addition of the defendant's stores located in an entire state (Missouri) that was not explicitly set forth in the operative Complaint and would have caused the volume of sales that were the subject of the suit "to be more than double what it would be without" the Missouri retailers. Importantly, the court added, even if the plaintiffs were not "constrained" by the definition set forth in the operative Complaint, the "[p]laintiffs had the opportunity to include the Missouri retailers in their class definition when they first moved for class certification, and again when they briefed their request for permission to file a second class certification motion." *See Smith v. Seeco, Inc.*, No. 4:15CV00147 BSM, 2016 WL 3541412, at *3 (E.D. Ark. Mar. 11, 2016) (court declined to expand the class definition on the grounds that expanding it would unduly prejudice the defendant since the parties had already conducted "months of discovery" and "expert disclosures [had] been submitted"); *see also Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) (the expanded class would have raised a new claim for relief not originally set forth in the Plaintiff's complaint).

Defendant further argues that the Opt-In Class should be limited to ASMs and LRCs within Kenneth McQuiller's District on the grounds that Plaintiff Drouillard stated during her deposition that "she is seeking to represent ASMs and LRCs within Kenneth McQuiller's ('McQuiller') district because 'those are the stores that I worked in [and] [t]hat is the only district I have ever been in.'" Def's. Opp'n at 18. According to Defendant, McQuiller is a District Manager who is currently responsible for eight of Defendant's retail stores located in Nassau and Suffolk Counties. Def's. Opp'n at 19. Defendant further explains that during the period of time

at issue, McQuiller also oversaw 3 out of 31 stores in Queens County and 3 out of 21 stores in Kings County.  *Id.*  Plaintiff counters that Defendant's position is largely premised on a "mischaracterization of excerpts taken from Plaintiff's deposition testimony and, as such, should not be entertained for this reason alone."  Pl's. Reply at 9.  Neither Plaintiff's Amended Complaint nor her Motion for Conditional Certification limits the proposed Opt-In Class to ASMs and LRCs within McQuiller's district.  The Court will not, at this juncture, limit the proposed Opt-In Class based on a comment made by Plaintiff during her deposition, regardless of whether Plaintiff's testimony has been "mischaracterized" by Defendant.

### C.    Proposed Notice to Opt-In Plaintiffs

#### i.    Limitations Period

As to the time frame covered in the notice, the FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Jie Zhang v. Wen Mei, Inc.*, No. 14-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388; *Francis*, 2008 WL 2588851, at *3, *adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct.16, 2008)).  Here, the Complaint contains allegations of willful conduct by Defendants.  Am. Compl. ¶ 68 27, 58.  Therefore, a three-year limitations period is appropriate.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order or the notice since the FLSA statute of limitations continues to run until a plaintiff consents to join the action.  *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013) (citing *Hernandez v. Immortal Rise, Inc.*, No. 11-4360, 2012 WL 4369746, at *6–7 (E.D.N.Y. Sept. 24,

2012)).  "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs,

courts frequently permit notice to be keyed to the three-year period prior to the filing of the

complaint, with the understanding that challenges to the timeliness of individual plaintiffs'

actions will be entertained at a later date.'"  *Gaspar v. Pers. Touch Moving, Inc*., No. 13-CV-

8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at

564 n.14) (internal alteration omitted); *see, e.g., Hamadou*, 915 F. Supp. 2d at 668; *Winfield v.

Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli v. Prime Time Specials

Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) (citing *Whitehorn v. Wolfgang's Steakhouse*,

Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)).  The Court therefore concludes that "the

remedial purposes of the FLSA are best served" here by keying notice to the three-year statute of

limitations from the date of the filing of the Complaint in this action.  *Fa Ting Wang*, 2015 WL

4603117, at *13; *Guzelgurgenli*, 883 F. Supp. 2d at 357 (citing *Whitehorn*, 767 F. Supp. 2d at

451) ("In light of potential issues with equitable tolling, the Court agrees that, in an abundance of

caution, the notice should be sent to all relevant employees" for the period running from the date

of filing of the complaint.).  Defendant relegates to a footnote and without any supporting case

law that because the Plaintiff did not seek to represent LRCs in this case until she filed her

Amended Complaint on September 19, 2016, then, "at a minimum, the notice date for the LRCs

should be measured from September 19, 2016."  Def's. Mem. at 20 n.5.  In an abundance of

caution, the court will key notice to the filing of the initial Complaint in this action.  Any

challenges to timeliness can be entertained at the second stage of this action.

### ii.    Eligible Employment Dates

Unlike FLSA claims, NYLL claims are subject to a six-year statute of limitations.  NYLL

§ 198(3).  Multiple courts in the Eastern District, including this Court, have held that in some

circumstances where a case involves both NYLL and FLSA claims, it promotes judicial

economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims.  *See D'Arpa v. Runway Towing Corp*., No. 12-CV-1120, 2012 WL 6138481, at *1 (E.D.N.Y. Dec. 11, 2012); *Lazo v. Queens Health Food Emporium, Inc*., No. 11-CV-5848, 2012 WL 2357564, at *3 (E.D.N.Y. June 20, 2012); *Moore*, 276 F.R.D. at 59 (citing *Cano*, 2009 WL 5710143, at *10); *Rodriguez v. Almighty Cleaning, Inc*., 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011) (citing the same); *Schwerdtfeger v. Demarchelier Mgmt, Inc*., No. 10-CV-7557, 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011); *Klimchak*, 2011 WL 1120463, at *7.

The Court has reviewed the arguments advanced by Defendant and, although the Court understands the rationale proffered by the Defendant, it sees no reason to restrict the notice to three years in the absence of a controlling decision from the Second Circuit.  "Questions regarding the form of notice are largely left to [the Court's] discretion."  *Guzman v. VLM, Inc*., No. 07-CV-1126, 2007 WL 2994278, at *6 (E.D.N.Y. Oct. 11, 2007) (citing *Gjurovich*, 282 F. Supp. 2d at 105-06).  In exercising that discretion, the Court finds that including notice of the state law claims is appropriate since "[i]nformation regarding state law claims may help potential plaintiffs determine whether they want to opt in to this suit or to pursue their claims in a different forum, and it is not clear how the dissemination of such information would harm defendants."  *Kemper*, 2012 WL 4976122, at *4; accord *Guzman*, 2007 WL 2994278, at *7.  The Court finds it "prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA.  Since there may be a number of employees who have both timely state and FLSA claims . . . it seems logical, efficient and manageable to compel defendant['[s]] production of these names only once."  *Han v. Sterling Nat'l Mortgage Co., Inc*., No. 09-CV-5589, 2011 WL 4344235, at *11 n.11 (E.D.N.Y. Sept. 14, 2011) (citing *Cano*, 2009 WL 5710143, at *10); *see D'Arpa*, 2012 WL 6138481, at *1;

*Klimchak*, 2011 WL 1120463, at *7.  The distinction between these statutory claims must be appropriately reflected in Plaintiff's Proposed Notice.

### iii.    Production of Identifying Information

Plaintiff seeks production of:

> a computer readable data file containing the names, last known addresses, home and cellular phone numbers, e-mail addresses, and dates of employment of all Lead Retail Consultants and Assistant Store Managers who currently work for or who have worked for Defendant at its Sprint store locations in New York County, Kings County, Queens County, Nassau County, and Suffolk County, New York at any time from February 5, 2010 (six years prior to the date of the filing of the Complaint in this action, February 5, 2016) so that notice may be issued to such potential opt-in plaintiffs.

Pl's. Mem. at 25.  Defendant has not filed any objection to this relief.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Velasquez v. Digital Page, Inc*., No. 11-CV-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citing *Puglisi*, 998 F. Supp. 2d at 102; *Rosario*, 828 F. Supp. 2d at 522; *In re Penthouse Executive Club Comp. Litig*., No. 10-CV-1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010)); *see, e.g., Fa Ting Wang*, 2015 WL 4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York).

The Court finds no reason to deviate from the common practice here.  Defendant is to provide the list within 14 days of entry of this Order.  The list is to be treated by the parties as confidential.  To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose.

D.      **Methods of Dissemination**

i.      **Posting of Notice and Consent to Joint Forms**

In addition to sending notice to potential class members via regular mail, Plaintiff requests permission to send notice via email and to post the Court-approved Notice and the court-approved Opt-In Consent forms at Sprint store locations in New York County, Kings County, Queens County, Nassau County, and Suffolk County.  Pl's. Mem. at 21.  Defendant does not object to this request.  *See generally* Def's. Mem. Courts regularly approve plaintiffs' requests to post notices and consent forms in "non-public areas" where potential collective members are likely to congregate, such as clock-in stations or break rooms.  *Trinidad*, 962 F. Supp. 2d at 564 (collecting cases); *Barbato v. Knightsbridge Properties*, No. 14-7043, 2015 WL 5884134, * (E.D.N.Y. Oct. 8, 2015) ("Defendant shall post the Proposed Notice and Consent to Join forms in a non-public common area in each of the Knightsbridge Properties.");  *Fa Ting Wang*, 2015 WL 4603117, at *17 (recommending the defendants "be ordered to post, in a reasonable location at each of Defendants' worksites for drivers, one copy of the Notice of Pendency and Consent to Join form in English, Chinese, Korean and Spanish"); *Hernandez*, 2013 WL 3199292, at *5 (collecting cases); *Whitehorn*, 767 F. Supp. 2d at 449 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 322, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009)) (citing *Garcia v. Pancho Villa's of Huntington Vill., Inc*., 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010)) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."). Consistent with the above case law, the Court grants Plaintiff's request to post notice and consent forms in non-public areas of Defendant's Nassau County, Suffolk County, Kings County, and Queens County retail store locations where employees congregate, such as staff lounges, break

rooms, or clock-in stations. Posting of Notice in locations of Defendant's facilities that are primarily frequented by customers is not permitted.

### ii.    Email

Plaintiff requests permission to send notice to members of the proposed collective via email. Pls.' Mem. at 16. In *Sharma v. Burberry Ltd.*, this Court explained that notification by electronic mail could create risks of distortion or misleading notification through modification of the notice itself or the addition of commentary. *Sharma*, 52 F. Supp. 3d at 463 (citing *Hintergerger v. Catholic Health Sys.*, No. 08-380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009); *Gordon v. Kaleida Health*, No. 08-378S, 2009 WL 3334784, at *11 (W.D.N.Y. Oct. 14, 2009); *Karvaly*, 245 F.R.D. at 91; *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Col. 2002)). In *Karvaly*, Judge Glasser observed that:

> electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.

*Id*. at 91 (quoting *Reab*, 214 F.R.D. at 630-31). This Court explained in *Sharma* that it shared these concerns with Judge Glasser and therefore denied Plaintiff's request to send notice via email. The Court's concerns in this regard have not changed since *Sharma*. Accordingly, Plaintiff's request to disseminate the Notice via email is denied.

### E.    Opt-in Period

Plaintiff requests that the Court set an opt-in period of 60 days from the date of the mailing of the Notice to potential plaintiffs. *See* DE 31-12. Defendant opposes and asks the Court to adopt a 45-day opt-in period. Def's. Opp'n at 21. "[A] 60–day notice period for potential plaintiffs is common practice under the FLSA." *Cohan v. Columbia Sussex Mgmt.,*

*LLC*, No. 12-3203, 2013 WL 8367807, at *12 (E.D.N.Y. Sept. 19, 2013) (collecting cases); *see, e.g.*, *Fa Ting Wang*, 2015 WL 4603117, at *11 (quoting *Velasquez*, 2014 WL 2048425, at *12) (collecting cases) ("Courts in this Circuit 'routinely restrict the opt-in period to sixty days.'"); *Whitehorn*, 767 F. Supp. 2d at 451-52.  The Court finds a 60-day response period to be appropriate and reasonable.  The Notice shall therefore reflect that Opt-Ins have 60 days to return the Consent to Join form to the Clerk of the Court.

### F.   Language of Notice and Consent to Join Forms

"[T]he district court has discretion regarding the form and content of the notice."  *In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *4-*5*; Lee*, 236 F.R.D. at 202 (citing *Hoffmann–La Roche*, 493 U.S. at 170) ("[T]he Supreme Court has noted that the 'details' of notice should be left to the broad discretion of the trial court.").  The Court directs counsel for Plaintiff Drouillard to amend the definition of the collective as set forth on page one of the Proposed Notice.  *See* Proposed Notice, annexed as Ex. J to Reilly Decl.

Defendant argues that the Notice should include language indicating that there is a possibility that a putative opt-in "may be required to pay a portion of court costs in the event that Sprint prevails."  Def's. Opp'n at 21.  In her Reply, Plaintiff Drouillard urges the Court to reject Defendant's request since it is an "obvious attempt to discourage potential opt-ins from joining this lawsuit."  Pl's. Reply at 10.  Defendant does not cite a single case in support of its position.  Plaintiff, however, cites two persuasive cases from this District in which the court rejected the very language that Defendant seeks to include here.  In *Sexton v. Franklin First Financial Ltd.*, No. 08-CV-04950, 2009 WL 1706535, at *13 (E.D.N.Y. June 16, 2009), the court characterized the language as "unnecessary" and "potentially confusing" (citing *Guzman*, 2007 WL 2994278, at *8).  The Court in *Guzman v. VLM, Inc.*, No. 7-1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) held as follows:

> Given the remote possibility that such costs for absent class members would be other than de minimis, and the absence of any showing by defendants that counterclaims are likely to be meaningful in this case, I think such language is inappropriate. It may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.

The Court finds the reasoning in *Sexton* and *Guzman* persuasive. Consequently, the Court declines to have the Notice include language that warns potential opt-ins that they may be required to pay a portion of court costs in the event Sprint prevails.

### G.    Equitable Tolling

Pursuant to 29 U.S.C. Section 256(b), the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit. However, "[a] district court may toll the limitations period to avoid inequitable circumstances…." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F. 3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman*, 288 F. 3d at 512).

Courts in the Second Circuit "have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang*, 2015 WL 4603117, at *14 (citing *Robles v. Liberty Restaurant Supply, Corp.*, No. 12-5021, 2013 WL 6684954, at *13 (E.D.N.Y. 2013); *Colon v. Major Perry Street Corp.*, No. 12-3788, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013); *McGlone*, 867 F. Supp. 2d at 445 (Potential plaintiffs "whose putative class

representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings.")).  Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed.  *See Chime v. Peak Sec. Plus, Inc*., 137 F. Supp. 3d 183, 188 (E.D.N.Y. 2015) (citing *Kassman v. KPMG LLP*, 11–CV–3743, 2015 WL 5178400, at *8 (S.D.N.Y. Sept. 4, 2015) (Schofield, J.)).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, in part, and DENIED, in part.

The Court directs counsel to revise the definition of the collective to comply with the directives in this Memorandum and Order.

The Court further orders that within 14 days of entry of this Order, Defendant is to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses and dates of employment for LRCs and ASMs who worked at any Sprint retail store located in New York County, Kings County, Queens County, Suffolk County, and Nassau County dating back to February 2, 2010.

<b>SO ORDERED.</b>

Dated:  Central Islip, New York
       September 29, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge